**JOHN C. ELLIS, JR.**
California State Bar No. 228083
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, CA 92101-5008
(619) 234-8467/Fax: (619) 687-2666
E-Mail: john_ellis@fd.org

Attorneys for Saul Toribio-Villalobos

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE LARRY A. BURNS)**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SAUL TORIBIO-VILLALOBOS,<br><br>Defendant. | Case No. 07CR2975-LAB<br><br>DATE: January 7, 2008<br>TIME: 2:00 p.m.<br><br>STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTIONS IN LIMINE |

**I.**

**STATEMENT OF FACTS**

The following statement of facts is based on materials received from the government. Mr. Toribio-Villalobos does not accept this statement of facts as his own, and reserves the right to take a contrary position at motion hearings and trial. The facts alleged in these motions are subject to amplification and/or modification at the time these motions are heard.

Mr. Toribio-Villalobos was arrested on August 24, 2007. On October 31, 2007, the government filed a one count indictment charging a violation of 8 U.S.C. § 1326.

These motions follow.

///

///

///

## II.

## ALL EVIDENCE FROM MR. TORIBIO'S A-FILE SHOULD BE EXCLUDED UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 16(d)(2)(C).

The government should be precluded from introducing any evidence from Mr. Toribio's A-file because it has failed to comply with Federal Rule of Criminal Procedure 16 ("FRCP 16"). FRCP 16(d)(2)(C) provides: "If a pary fails to comply with this rule, the court may...prohibit that party from introducing the undisclosed evidence...."

In this case, defense counsel has made numerous attempts to inspect and/or receive documents from Mr. Toribio's A-file. On August 28, 2007, Mr. Toribio made his first request for discovery via letter to government. On November 5, 2007, Mr. Toribio, in his motions, made additional requests for discovery. On November 27, 2007, after several phone calls to the assigned United States Attorney, defense counsel sent an email requesting "an opportunity to view Mr. Toribio-Villalobo's A-file." Exhibit A. Despite counsel's multiple requests, government counsel neither responded to nor arranged a viewing of Mr. Toribio's A-file. On December 20, 2007, defense counsel called the assigned United States Attorney in order to follow up on previous requests to view Mr. Toribio's A-file. According the assistant's voicemail, he was out of the office until December 31, 2007. On the same date, defense counsel called the assistant's secretary, and left a voicemail message requesting a copy of Mr. Toribio's a-file. On December 21, 2007, defense counsel once again called and left a voice message for the assistant's secretary regarding Mr. Toribio's a-file. On that afternoon, the assistant's secretary responded that the documents would not be available until the following week. On December 27, 2207, defense counsel, for the first time, received documents from Mr. Toribio's a-file. On December 28, 2007, defense counsel made an additional request to view Mr. Toribo's a-file. Exhibit B. It was defense counsel's understanding that Assistant United States Attorney Eugene Litvinoff was assisting the assigned attorney during his absence. In response to this requests, a secretary left a voicemail informing defense counsel that the a-file would not be available for viewing until the assigned attorney returned to the office on January 2, 2008. This morning, while defense counsel was preparing to file motions, government counsel advised that the a-file was now available for inspection.[1]

---

[1] It is too late in the game for the government's attempts to comply with Rule 16. It was only after defense counsel informed government counsel that he was drafting a motion to

In short, despite defense counsel's diligent efforts, government counsel did not make Mr. Toribo's a-file available until the last minute, and did not produce any records from the a-file until December 27, which was only four days before motions in limine were due. It is unclear whether all discoverable documents from Mr. Toribio's a-file have been produced. Government counsel must be held accountable for the failure to timely comply with Rule 16. Unwarranted delays are not fair to the accused, defense counsel, or this Court. The appropriate remedy in this case is to make government counsel accountable for his failure to comply with Rule 16 and exclude all evidence from Mr. Toribio's a-file.

### III.

### THIS COURT SHOULD PRECLUDE ANY EVIDENCE UNDER FEDERAL RULE OF EVIDENCE 404(B) AND 609

The Court should preclude the Government from introducing any Rule 404(b) or Rule 609 evidence. The Court should preclude 404(b) evidence because the Government has failed to provide any notice, and the Government has not established that such evidence is relevant. All Rule 609 evidence should be precluded because it is irrelevant, and any probative value is substantially outweighed by its prejudicial effect.

**A.      This Court Should Exclude All 404(b) Evidence.**

This Court should exclude all 404(b) evidence because the Government has failed to comply with its obligation to provide timely notice. Rule 404(b) requires that the Government provide "reasonable notice in advance of trial" of any evidence of "other crimes, wrongs, or acts" it plans to introduce. Fed. R. Evid. 404(b). The notice requirement is triggered when timely requested by the defendant. United States v. Vega, 188 F.3d 1150, 1154 (9th Cir. 1999). Here, Mr. Toribio requested notice in his August 28, 2007 letter and his November 5, 2007 motion for discovery. To date, government counsel has not indicated that he intends to offer such evidence, therefore, the Government should be precluded from introducing such evidence at trial.

Moreover, the Government carries the burden of showing how any other acts evidence is relevant to one or more issues in the case; therefore, "it must articulate precisely *the evidential hypothesis* by which

---

exclude all evidence from the a-file for violating Rule 16 that government counsel indicated that a-file was available for inspection. Counsel will make efforts to inspect the a-file as soon as possible, but counsel must first make efforts to finish drafting the numerous motions in this case.

a fact of consequence may be inferred from the other acts evidence." United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir. 1982) (citing United States v. Hernandez-Miranda, 601 F.2d 1104, 1108 (9th Cir. 1979)) (emphasis added); accord United States v. Brooke, 4 F.3d 1480, 1483 (9th Cir. 1993). Because the Government has not presented an evidential hypothesis, this evidence must be excluded under Federal Rules of Evidence 401, 404(b) and 403.

**B.   This Court Should Exclude All 609 Evidence.**

Under Rule 609, evidence of prior convictions is usually admissible only under certain circumstances, and in the discretion of the Court. Federal Rule of Evidence 609(a)(1) restricts impeachment of the accused by evidence of a prior conviction to only those offenses for which the Court determines that the probative value outweighs its prejudicial effect to the accused. The Government should be precluded from introducing any evidence of prior convictions because it is irrelevant under Federal Rule of Evidence 401, prejudicial under Federal Rule of Evidence 403, and the government has not provided any notice of its intent to introduce this evidence.

To the extent that this Court rules that Mr. Toribio' alleged prior convictions are admissible under Federal Rule of Evidence 609, this Court should redact any documents referencing, and preclude the prosecutor from referring to, the offense and specific facts of any crime for which Mr. Toribio was convicted. Such information would be more prejudicial than probative of Mr. Toribio' guilt of the charged offense.

### IV.

### THE GOVERNMENT MUST BE PRECLUDED FROM USING DEPORTATION DOCUMENTS AS EVIDENCE OF ALIENAGE

**A.   The Warrant of Removal and the Administrative Removal Order Are Only Admissible to Establish the Fact of the Removal, *Not* Alienage.**

Mr. Toribio expects that the Government will seek to introduce a warrant of deportation and a final administrative removal order to establish the fact of his alleged deportation. These two documents are admissible *only* to establish the fact of the deportation. See, e.g., United States v. Contreras, 63 F.3d 852, 857 (9th Cir. 1995); United States v. Hernandez-Rojas, 617 F.2d 533, 535-36 (9th Cir. 1980). Neither the warrant of removal, nor the administrative removal order, reflect the "objective, ministerial fact" of alienage; accordingly, neither are admissible under Federal Rule of Evidence 803(8)(B) to establish the fact of alienage.

1   Both the warrant of removal and the administrative removal order reflect the ministerial fact of the

2 *removal*, not Mr. Toribio' alleged alienage. As the Ninth Circuit has explained:

> **Clearly it would be improper for the government to rely on factual findings from a deportation hearing to prove an element of the crime of illegal reentry, as the burden of proof in a criminal proceeding requires a greater showing by the government than in an administrative hearing.** The use of a deportation order to prove the element of alienage would allow the government to skirt around the more stringent requirements of a criminal proceeding by relying on that factual finding from the INS proceeding. To put it more simply, the government would demonstrate that Medina is an alien by showing that the INS found that he was an alien.

9 United States v. Medina, 236 F.3d 1028, 1030, 1031 (9th Cir. 2001) (emphasis added). Simply put, alienage

10 is not a fact that is observed; it is a fact that is "found" by an immigration official--in this case without the

11 benefit of a hearing, and the order of deportation reflects the quintessential "factual finding" rendered after

12 an administrative hearing. Likewise, the warrant of removal reflects only that a field office director

13 concluded that Mr. Toribio was an alien and that Mr. Toribio may have been removed from the United

14 States—it has no bearing whatsoever on the fact of alienage. Accordingly, the warrant of removal and

15 administrative removal order are not admissible under Federal Rule of Evidence 803(8) or Federal Rule of

16 Evidence 401 to establish the fact of alienage.[2]

17   Finally, to the extent that this Court finds that these documents are relevant under Federal Rule of

18 Evidence 401, these documents should still be excluded pursuant to Federal Rule of Evidence 403, because

19 their probative value is substantially outweighed by their prejudicial effect. Both the warrant of removal and

---

[2] In United States v. Hernandez-Herrera, 273 F.3d 1213, 1217-1218 (9th Cir. 2001), the Ninth Circuit stated summarily that A-File documents are admissible under Federal Rule of Evidence 803(8)(B) to establish the fact of alienage. Because the Court failed to set forth any reasoned discussion, failed to discuss the decision in Medina, and did not specify which documents from the A-File were admitted in Mr. Hernandez-Herrera's case, see id., this case is not binding authority, and this Court must still address this issue. See, e.g., Miranda B. v. Kitzhaber, 328 F.3d 1181, 1186 (9th Cir. 2003) (*per curiam*) (requiring "reasoned consideration in a published opinion" for a "ruling [to] becom[e] the law of the circuit"); United States v. Collicott, 92 F.2d 973, 980 n.4 (9th Cir. 1996) (holding that prior Ninth Circuit case is not binding "in the absence of reasoned analysis and analogous facts"). In any event, Hernandez-Herrera never held that these documents were admissible under Federal Rules of Evidence 401 or 403, or the Fifth and Sixth Amendments. See Webster v. Fall, 266 U.S. 507, 512 (1925) (stating that "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon are not to be considered as having been so decided as to constitute precedent").

administrative removal order make reference to an "alien;" even more troubling, in the context of these documents, the term "alien" is associated *with* Mr. Toribio, who presumably is the "alien" to which the documents refer. In the face of these quasi-official Government documents proclaiming Mr. Toribio to be an "alien," there is a real danger that jurors will no longer see the alienage element of 8 U.S.C. § 1326 as an open question that the Government must prove beyond a reasonable doubt.

Should the Court nonetheless admit these documents, Mr. Toribio requests that this Court instruct the jury, pursuant to Federal Rule of Evidence 105, that it may only consider the warrant of removal and administrative removal order to establish the fact of the deportation and for no other purpose, and that these documents do not, in and of themselves, establish the fact of alienage. Mr. Toribio further requests that this Court redact these documents to exclude any reference to his alleged alienage.

**B.     None of the Other A-File Documents Are Admissible Under Any Rule of Evidence.**[3]

Mr. Toribio anticipates that the Government may seek to admit other documents from the A-File, including the order to show cause why a person should not be deported and warnings regarding the possible penalties for reentry. None of these documents from the A-File are admissible to establish any matter at issue in this trial. All documents from the A-File—except the warrant of deportation and the order of deportation discussed previously—are irrelevant under Federal Rule of Evidence 401; more prejudicial than probative, cumulative, and a waste of time under Federal Rule of Evidence 403; and inadmissible hearsay under Federal Rule of Evidence 803(8).

**1.     The Notice to Appear Is Inadmissible.**

The Notice to Appear is inadmissible under Federal Rules of Evidence 401, 403, and 803(8). The Notice to Appear is a document that provides an alien with *notice* of the grounds for removal. It does not record the "objective, ministerial fact" of alienage or of a deportation any more than an indictment provides an objective observation that a person committed a crime. This document is nothing more than an *accusation* that the Government must prove in an immigration proceeding.

/ / /

---

[3]     As is indicated above, to date, defense counsel has not had the opportunity to view Mr. Toribo's a-file, and it is unclear what, if any, documents exist therein or what documents the government may attempt to rely upon. Accordingly, these motions are being filed in an abundance of caution.

1       **2.**      **The Warnings of Possible Penalties Is Inadmissible.**

2       Likewise, the warning of possible penalties is inadmissible under Federal Rules of Evidence 401, 403, and 803(8).  The warning of possible penalties contains boilerplate statements (drafted by the former INS) regarding the penal consequences to an alien who illegally reenters the country.  It has no bearing on whether a defendant is in fact an alien, and it makes no fact at issue in this case more or less probable.  This document contains inadmissible hearsay, and is completely irrelevant.  It is also more prejudicial than probative.  Among other things, given the serious consequences listed on the warning of possible penalties, jurors may be led to speculate what this defendant did to be subject to such harsh penalties upon reentry; needless to say, such speculation is completely irrelevant to the charge at hand, and could be severely prejudicial.  Accordingly, the warnings of possible penalties also must be excluded at trial.

      **3.**      **If This Court Finds That These Documents Are Somehow Relevant, They Are Not Admissible to Establish Alienage; Thus, This Court Should Provide the Jury With a Limiting Instruction.**

      To the extent that this Court finds any A-File document relevant to some point, the document is not admissible to establish Mr. Toribio' alienage.  Accordingly, this Court should redact these documents to exclude all references to alienage.  Additionally, the Court should instruct the jury as to the limited value of such documents pursuant to Federal Rule of Evidence 105.

**C.**      **This Court Must Preclude the Admission of the A-File Documents to Establish Alienage to Protect Mr. Toribio' Constitutional Rights.**

      Finally, this Court must preclude the admission of A-File documents to establish the fact of alienage to protect Mr. Toribio' rights to confrontation of witnesses and to a jury trial based upon proof beyond a reasonable doubt—rights guaranteed by the Fifth and Sixth Amendments.  Because the right to confrontation is not applicable in immigration proceedings, the Government may have met its burden of proving alienage in such a proceeding based upon otherwise inadmissible hearsay.  <u>Cunanan v. INS</u>, 856 F.2d 1373, 1374 (9th Cir. 1988).  Similarly, because a criminal defendant such as Mr. Toribio never has the opportunity to confront those witnesses upon whose hearsay statements the immigration judge may have relied, the admission of the (former) INS' evaluation of alienage deprives a defendant of his right to confront the witnesses against him.

      Additionally, in immigration proceedings, the Government need only establish alienage by clear and convincing evidence.  <u>Murphy v. INS</u>, 54 F.3d 605, 608-610 (9th Cir. 1995).  Once the Government has

1  established a person's foreign birth, the burden shifts to the purported alien to establish, by a preponderance
2  of the evidence, that he falls within one of the statutory provisions for derivative citizenship. Id. Given the
3  lower burden of proof and the shifting presumption, the admission of A-File documents against a criminal
4  defendant to establish the fact of alienage has the effect of lowering the Government's burden of proving
5  alienage in the criminal trial.
6     Finally, a determination of alienage by a quasi-judicial decision-maker represents powerful evidence
7  of an element of the offense, and it creates a substantial risk that the jury will give this evidence undue weight
8  or conclusive effect. Cf. Nipper v. Snipes, 7 F.3d 415, 418 (4th Cir. 1993) (internal quotations omitted)
9  (stating "judicial findings of fact 'present a rare case where, by virtue of there having been made by a judge,
10 they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice'");
11 Federal Rules of Evidence 803(22), Advisory Committee Note (observing that "it seems safe to assume that
12 the jury will give [evidence of a criminal judgment] substantial effect unless defendant offers a satisfactory
13 explanation"). The Government's introduction of a Government agency's finding of alienage to establish the
14 fact of alienage carries with it the imprimatur of governmental, if not judicial, approval. The admission of
15 this factual finding undermines a defendant's constitutional right to a reliable jury finding of an essential
16 element.
17    In sum, because the A-File documents are generated by the Government without the constitutional
18 safeguards surrounding criminal proceedings, it is unconscionable and constitutionally untenable to authorize
19 their admission, as evidence of alienage, in a criminal prosecution. This Court should exclude these
20 documents in their entirety; or, to the extent the Court finds that these documents are admissible to prove
21 some other fact, it should redact these documents to exclude reference to Mr. Toribio' alienage, and instruct
22 the jury as to the documents' limited relevance.

23                                                **V.**

24                    **THIS COURT SHOULD COMPEL INSPECTION OF**
                          **CERTIFIED DOCUMENTS PRE-TRIAL**
25

26    While Mr. Toribio objects to the introduction of any A-File documents, it is clear that no public
27 record can be introduced unless certified. While the defense has received photocopies of several documents
28 in discovery, it has not received copies of any alleged certifications. Typically, these simply appear in the

1 middle of trial. Defense counsel requests an opportunity to inspect any alleged certifications pre-trial, so that any issues can be dealt with in a timely and appropriate way.

## VI.

### THIS COURT SHOULD PRECLUDE THE "A-FILE CUSTODIAN" FROM TESTIFYING ABOUT IMMIGRATION PROCEEDINGS

Under the Fifth and Sixth Amendments, a defendant has a constitutional right to a fair trial and to confront witnesses. Additionally, evidence must be relevant and not create confusion, or be prejudicial. Fed. R. Ev. 401, 403. Finally, no lay witness is permitted to offer an opinion or testify about specialized knowledge. Fed. R. Ev. 702; United States v. Figueroa-Lopez, 125 F.3d 1241, 1245 (9th Cir. 1997) (expert opinion need not be based upon highly technical knowledge; it may be based upon knowledge which would be "unfamiliar" to "the ordinary juror").

In this case, defense counsel expects that the Government will call the "A-File custodian" to establish the foundation for the admission of selected documents from Mr. Toribio' A-File. It is also expected that the Government will ask the "A-File custodian" how immigration proceedings work and what occurs when an individual is physically deported. Such testimony is inadmissible under Federal Rules of Evidence 401, 403, 702, 802, and its admission would violate Mr. Toribio' rights to a fair trial and to confront witnesses under the Fifth and Sixth Amendments. For example, it is unlikely that the "A-File custodian" has participated in deportation proceedings as either an immigration judge, an immigration attorney, a deportation enforcement officer, or a deportee; thus, he or she would not be testifying from his or her own personal knowledge, but rather from the hearsay statements of other people who were not presented by the Government for cross-examination by Mr. Toribio. Accordingly, this Court should preclude the "A-File custodian" from testifying about how immigration proceedings work and about the significance of documents related to those proceedings. Rather, assuming the Court finds the A-File documents admissible despite Mr. Toribio' arguments to the contrary, this Court should limit the "A-File custodian's" testimony to laying a foundation for the admission of the A-File documents—and only then to the extent that the "A-File custodian" has the personal knowledge necessary to lay that foundation.

/ / /

/ / /

## VII.

## THIS COURT SHOULD PRECLUDE THE "A-FILE CUSTODIAN" FROM TESTIFYING ABOUT SEARCHING DATABASES FOR PERMISSION TO REENTER

Counsel anticipate that the Government will seek to establish, through the "A-File custodian," that Mr. Toribio lacked permission to reapply for admission to the United States. Typically, this consists of the agent's explaining that she searched two databases and the A-File for a so-called "I-212" form by which an alien can apply for permission to reapply for admission to the United States, and found none. Such testimony is inadmissible under Federal Rules of Evidence 401, 403, 702, 802, 1002, and its admission would violate Mr. Toribio' rights to a fair trial and to confront witnesses under the Fifth and Sixth Amendments.

The best evidence rule provides that the **original** of a "writing, recording, or photograph" is required to prove the contents thereof. Fed. R. Evid. 1002. A writing or recording includes a "mechanical or electronic recording" or "other form of data compilation." Fed. R. Evid. 1001(1).

> An "original" of a writing or recording is the writing or recording itself or any counterpart intended to have the same effect by a person executing or issuing it . . .. If data are stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an "original."

Fed. R. Evid. 1001(3).

In United States v. Bennett, 363 F.3d 947 (9th Cir. 2004), a case out of this district, the defendant was charged with importation of marijuana and possession with intent to distribute. The agent testified that the boat, which was found in United States' waters, had traveled into the United States from Mexico, based on data the agent saw on the ship's global positioning system. The Court found that the best evidence rule applies in cases, like this one, "when a witness seeks to testify about the contents of a writing, recording or photograph without producing the physical item itself-particularly when the witness was not privy to the events those contents describe." Id. at 953 (citing Fed. R. Evid. 1002 Advisory Committee's note). The Ninth Circuit held that, based on the best evidence rule, the district court committed reversible error by allowing the introduction of this testimony. Id. at 956.

Here, it is anticipated that the Government will seek to establish that an I-212 form was not submitted, based on an agent's alleged review of data contained on a Government database. Under Rule

1002, however, the best evidence is the database itself, or a report generated from the database, not an agent's testimony. Therefore, the introduction of this testimony is violative of the Rule 1002.

Moreover, as explained previously, under the Fifth and Sixth Amendments, a defendant has a constitutional right to a fair trial and to confront witnesses. Additionally, evidence must be relevant and not create confusion or be prejudicial. Fed. R. Ev. 401, 403. Finally, no lay witness is permitted to offer an opinion or testify about specialized knowledge. Fed. R. Ev. 702; <u>United States v. Figueroa-Lopez</u>, 125 F.3d 1241, 1245 (9th Cir. 1997) (expert opinion need not be based upon highly technical knowledge; it may be based upon knowledge which would be "unfamiliar" to "the ordinary juror").

The "A-File custodian's" testimony regarding database searches violates these rights on several levels. For example, it is unlikely that the "A-File custodian" has himself or herself input the information he or she allegedly searches for into the databases that he or she testifies about; rather, he or she is testifying about what other persons have input (or failed to input). Accordingly, the "A-File custodian" has no personal knowledge whatsoever regarding why information regarding Mr. Toribio does or does not appear in these systems, but is instead testifying from the hearsay statements of other people who were not presented by the Government for cross-examination by Mr. Toribio.

Equally troubling, the "A-File custodian" is not a database or immigration expert, and it is expected that the Government will not qualify the "A-File custodian" as an expert in this regard. Nor will the Government provide the defense with expert notice as required by Federal Rule of Evidence 702. Yet, it is clear that searching complex Government databases for specialized information reflecting legally-complex immigration procedures requires specialized knowledge far outside the ken of a lay witness. Finally, the "A-File custodian's" testimony regarding database searches yielding no evidence of permission to reapply for admission can only serve to confuse the jury and prejudice Mr. Toribio. By allowing the "A-File custodian" to testify in a conclusory manner regarding searches she is not qualified to perform, this Court virtually ensures that the jury will give the "A-File custodian's" testimony far more weight than it is due.

///

///

///

///

## VIII.

## MR. TORIBIO MUST BE GIVEN THE OPPORTUNITY TO ATTACK THE CREDIBILITY OF THE HEARSAY DECLARANT

Under the Federal Rules of Evidence and the Fifth and Sixth Amendments to the Constitution, Mr. Toribio must be given the opportunity to attack the credibility of all hearsay declarants. Federal Rule of Evidence 806, provides:

> When a hearsay statement, or a statement defined in Rule 801(d)(2)(C), (D), or (E), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, inconsistent with the declarant's hearsay statement, is not subject to any requirement that the declarant may have been afforded an opportunity to deny or explain. If the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine the declarant on the statement as if under cross-examination.

It is anticipated that the Government will attempt to introduce hearsay evidence (*e.g.*, documents, or the lack of documents, from Mr. Toribio' A-File) under a theory that the evidence is admissible under FRE 803(6) ("Records of Regularly Conducted Activity") and 803(7) ("Absence of Entry in Records Kept in Accordance With the Provisions of Paragraph (6)"). The declarant in the context of Rules 803(6) and 803(7) is the business or organization itself (*i.e.*, the Department of Homeland Security ["DHS"] (and its predecessor in interest the Immigration and Naturalization Service ["INS"]). If the Government seeks to introduce hearsay evidence on the basis of Rule 803(6) or 803(7), then Mr. Toribio must be given the opportunity to attack the credibility of the hearsay declarant (*i.e.*, the DHS or INS). The types of impeachment include, but are not limited to, reputation and prior inconsistent statements. See Fed. R. Evid. 608; Fed. R. Evid. 613(b); United States v. Moody, 903 F.2d 321, 328-329 (5th Cir. 1990). The failure to allow Mr. Toribio the opportunity to impeach the credibility of the hearsay declarant is reversible error and a violation of his Sixth Amendment right to confrontation and his Fifth Amendment right to due process. See Moody, 903 F.2d at 329; see also United States v. Wali, 860 F.2d 588 (3d Cir. 1988).[4]

---

[4] United States v. Rodriguez-Rodriguez, 393 F.3d 849 (9th Cir. 2005), is not to the contrary. In Rodriguez-Rodriguez, the Ninth Circuit incorrectly determined that the trial court's refusal to allow cross-examination regarding the record keeping practices of the INS did not violate the defendant's rights under the Confrontation Clause. Here, the proposed introduction of testimony

## IX.

## THIS COURT SHOULD GRANT MR. TORIBIO LEAVE TO FILE FURTHER MOTIONS

As is indicated above, defense counsel has not yet viewed Mr. Toribio's a-file. Additionally, counsel only recently received Mr. Toribio's deportation documents. Based on these documents, defense counsel intends on filing motions attacking this removal based on due process grounds. See 8 U.S.C. § 1326(d). Due to the complexity of this motion, and the fact that defense counsel has not had the opportunity to view the a-file, defense counsel will not be able to file the motion today. Accordingly, defense counsel seeks leave of this court to file, if necessary, further motions upon inspection of the a-file. The failure to grant this motion will prejudice Mr. Toribio and violate his Fifth and Sixth Amendment rights.

## X.

## CONCLUSION

For the reasons stated above, Mr. Toribio moves this Court to grant his motions.

Respectfully submitted,

DATED:           December 31, 2007

_/s/ John C. Ellis, Jr._
JOHN C. ELLIS, JR.
Federal Defenders of San Diego, Inc.
Attorneys for Saul Toribio-Villalobos
john_ellis@fd.org

---

is premised on the theory of impeachment of the hearsay declarant. Thus, Rodriguez-Rodriguez is inapplicable.